**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**REISHA GOSLEY,**

      **Plaintiff,**                       **CASE NO.: 0:17-cv-62175-WPD**

**v.**

**BCA FINANCIAL SERVICES, INC.,**

      **Defendant.**

_____/

**DEFENDANT'S MOTION FOR SUMMARY**
**JUDGMENT AND INCORPORATED MEMORANDUM OF LAW[1]**

COMES NOW, Defendant BCA FINANCIAL SERVICES, INC. ("BCA" and/or "Defendant"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 56 and Southern District of Florida Local Rule 56.1, and hereby files this Second Motion for Summary Judgment and Incorporated Memorandum of Law, and states the following in support thereof:

**I.**       **Factual Background / Procedural History.**

      **a.**    ***Plaintiff's Allegations.***

On November 7, 2017, Plaintiff filed her original Complaint alleging BCA violated the FDCPA by attempting to collect a debt from her that was subject to workers' compensation. *See*, DE 1. On April 17, 2018, Plaintiff filed her First Amended Complaint against BCA making the same FDCPA allegations and adding claims under the Telephone Consumer Protection Act, 47

---

[1] Defendant filed a Motion for Summary Judgment that was denied by the Court earlier in the case. As will be detailed in the instant Motion, the factual representation by Plaintiff's counsel and relied upon by the Court in denying that Motion has been proven inaccurate. In addition, Plaintiff subsequently added a TCPA claim, which is addressed in this Motion as well.

U.S.C. § 227 ("TCPA"). *See,* DE 34, generally.[2] Plaintiff's claims are predicated on attempts by BCA to collect a debt for medical services. *Ibid.* Plaintiff asserts the medical services rendered by Broward Health North on July 26, 2016 were for "work-related injuries" and should have been covered by workers' compensation. *Ibid.* at ¶¶ 8-11. Notably, Plaintiff alleges BCA's collection activity consisted of **two letters** and 10 phone calls, placed between December 2, 2016 and March 9, 2017, to Plaintiff's phone number, 718-600-4388. *Ibid.* at ¶¶ 12-13 (emphasis added).

In Count I, Plaintiff alleges BCA violated § 1692f(1) of the FDCPA by "attempting to collect a debt from Plaintiff, through both [collection letters] mailed to Plaintiff and through the phone calls… when that debt was not permitted by law, specifically §440.13, Fla. St. and [BCA] knew or alternatively should have known that the debt was not permitted by law." *Ibid.* at ¶ 25. Plaintiff further alleges BCA violated § 1692e(2)(A) of the FDCPA by "falsely representing that Plaintiff owes the alleged debt, through the [collection letters] mailed to Plaintiff, when in fact Plaintiff did not owe the alleged debt and Defendant knew or alternatively should have known that Plaintiff did not owe the alleged debt." *Ibid.* at ¶ 27.

In Count II, Plaintiff alleges BCA violated the TCPA "on ten separate occasions by placing phone calls, using an automatic telephone dialing system, to Plaintiff's telephone number while it was assigned to a cellular telephone service when Plaintiff either did not expressly consent to receive those calls, or in the alternative such consent was revoked as a matter of law." *Ibid.* at ¶ 30.

---

[2] The initial Complaint alleged only violations of the FDCPA and was originally filed in state court but was subsequently removed to this Court on November 7, 2017. *See,* DE 1.

### b. *BCA's handling of Plaintiff's Account.*

On or about November 14, 2016, an account belonging to Plaintiff REISHA GOSLEY, Reference No. xxxxx3859,[3] was referred to BCA for collection by Broward Health North. *See,* Statement of Material Facts at ¶ 8. At the time of referral, BCA was provided certain information related to Plaintiff's account by Broward Health North including the balance of $3,556.02 as well as Plaintiff's address, █████ NW 15th Ct., Pembroke Pines, FL 33024-4823. [4] *Ibid.* at ¶ 9.

BCA has an understanding with its clients, including Broward Health North, that any account placed for collection with BCA must be validly due and owing and the client is responsible for providing accurate, up-to-date information about the referred account to BCA. *Ibid.* at ¶ 10. As a result, upon referral of Plaintiff's account, BCA did not perform a pre-collection investigation into the validity of Plaintiff's debt as BCA relied on Broward Health North regarding the validity and legality of the debt it sought to collect from Plaintiff. *Ibid.* at ¶ 11.

Based on the information provided to it by Broward Health North, BCA's collection attempts on Plaintiff's account consisted of mailing collection letters, dated November 15, 2016 and December 30, 2016, to Plaintiff's address at █████ NW 15th Ct., Pembroke Pines, FL 33024-4823. *Ibid.* at ¶ 12. BCA's initial collection letter to Plaintiff, dated November 15, 2016, included the following notice as required by the FDCPA:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgement and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

---

[3] The Reference Number has been partial redacted throughout this Motion for confidentiality purposes.
[4] Plaintiff's address has been partially redacted throughout this Motion for confidentiality purposes.

*Ibid.* at ¶ 13.

Neither the November 15, 2016 nor the December 30, 2016 collection letters mailed by BCA to Plaintiff were returned as undeliverable. *See,* 6-1 at ¶ 10. In fact, BCA understands that Plaintiff received both of BCA's collection letters, as she attached a copy of BCA's collection letter dated December 30, 2016 which was sent to the same address and in the same manner as all other collection letters. *Ibid.* at ¶ 15.

In addition to the two letters, BCA also made phone calls to the number identified in Plaintiff's First Amended Complaint, 718-600-4388 (Plaintiff's "phone number"). *Ibid.* at ¶ 16. There was no direct communication as a result of any of the calls BCA placed to Plaintiff's phone number. *Ibid.*

On or about April 3, 2017, BCA received correspondence from Plaintiff's counsel, dated March 28, 2017, which alleged BCA's collection letters violated federal law and attached an unfiled draft version of the instant Complaint ("Plaintiff's Demand Letter"). *Ibid.* at ¶ 17. Plaintiff's Demand Letter also provided BCA worker's compensation information related to Plaintiff's July 26, 2016 medical treatment. *Ibid.* at ¶ 18. Plaintiff's Demand Letter was the first time BCA was provided notice of any kind that the medical treatment provided to Plaintiff by Broward Health North allegedly involved a work-related injury. *Ibid.*

Upon receipt of Plaintiff's Demand Letter, BCA suspended all collection activity on Plaintiff's account. *Ibid.* at ¶ 19. BCA then contacted its client, who was unable to confirm the debt was subject to Workers' Compensation. *Ibid.* at ¶ 20. BCA then located information for and contacted Publix risk management (Plaintiff worked for Publix) and confirmed the injury was work-related. *Ibid.* at ¶ 21. BCA then closed the account and sent it back to the hospital along with the claim information it received from Publix. BCA also sent a letter to Plaintiff's counsel advising

him the account was being closed. *Ibid.* at ¶ 22. Prior to receipt of Plaintiff's Demand Letter, dated March 28, 2017, BCA never received any communication from Plaintiff, whether written or otherwise, in any way disputing the Broward Health North debt, or any portion thereof. If Plaintiff had disputed the debt as provided for in the FDCPA, BCA would have ceased collection attempts as provided in the FDCPA, thereby avoiding FDCPA liability. *Ibid.* at ¶ 23.

### c.   *BCA's policies and procedures related to Workers' Compensation.*

BCA maintains policies and procedures to address situations as the one contemplated in this lawsuit. BCA has contracts with each of its client, including Broward Health North. *Ibid.* at ¶ 24. Per such contracts, any account placed for collection with BCA must be validly due and owing. *Ibid.* If BCA identifies through communications that a consumer disputes their liability for whatever reason, BCA stops collecting on the account, performs an investigation into the consumer's claims, and confirms the balance due with the creditor. *Ibid.* at ¶ 25. If at any time, BCA becomes aware that an account referred to it by a client is compensable through Worker's Compensation, BCA will not continue attempts to collect the debt from the consumer. *Ibid.* at ¶ 26. Furthermore, if BCA is made aware that an account would be compensable by Worker's Compensation at the inception of the referral, BCA would not accept such account and immediately return it to the client. *Ibid.* at ¶ 27.

BCA trains its employees to understand that Worker's Compensation claims are not payable by the consumer. BCA's training includes, but is not limited to the following:

1. Written Policies and Procedures.
2. Classroom presentations where a "trainer" has "participant guides that train employees on what type of debts they can and cannot collect.
3. Written guides, referred to as "Job aids" on such topics as Worker's Compensation, Tri-car, Veterans' Administration, Medicare, Medicaid, etc.
4. Classroom training.

5.  When an employee starts works, on their first day they go into classes.  Such classes consist of a two and half week classroom training which encompasses approximately eight (8) hours of training each day.
6.  BCA has a syllabus that outlines what elements will be trained on what days and at what times.

*Ibid.* at ¶ 28.

Moreover, BCA has written policies and procedures that detail such issues as raised in Plaintiff's lawsuit such as 1) Consumer Disputes; and 2) Workers' Compensation. *Ibid.* at ¶ 29.

BCA has extensive written policies and procedures relative to "consumer disputes." *Ibid.* at ¶ 30. BCA's written policies and procedures for handling an account that is compensable by Worker's Compensation detail that the patient/consumer has no responsibility for injuries that are covered by workers' compensation. *Ibid.* at ¶ 31.

### d.  *Plaintiff's Deposition Testimony.*

On June 1, 2018, Defendant took the deposition of Plaintiff. During her deposition, Plaintiff was provided a copy of her First Amended Complaint and, on two separate occasions, Plaintiff reviewed the First Amended Complaint in its entirety. *Ibid.* at pp. 30-32. After each of her in-deposition reviews of the First Amended Complaint, Plaintiff confirmed all the allegations were accurate. *Ibid.* Plaintiff's testimony confirming the accuracy of the allegations in the First Amended Complaint encompassed the allegation Plaintiff "received two statements from Defendant, sent by mail to Plaintiff's home address in Broward County, Florida." *See,* DE 34 at ¶ 12.

Plaintiff also testified that she provided the telephone number at which she received calls from BCA to the creditor/hospital. *Ibid.* at p. 19, 21 – 22. Plaintiff testified she received calls from BCA but did not recall "ever having a conversation" with someone calling from BCA. *Ibid.* at pp. 32-35.

### d.  *BCA's Initial Motion for Summary Judgment (DE 6).*

On November 21, 2017, BCA filed its Motion for Summary Judgment ("MSJ"). *See,* DE 6. At the time, the pending Complaint contained only FDCPA claims. In its MSJ, BCA argued it was entitled to summary judgment as: 1. Plaintiff waived her right to pursue her FDCPA claims by failing to exercise her right to dispute the validity of the debt in response to BCA's November 15, 2016 letter; and 2. BCA had the right to rely on Broward Health North to determine the amount due from Plaintiff. *Ibid.*

On December 14, 2017, Plaintiff filed her Response to BCA's MSJ. *See,* DE 12. Plaintiff's Response asserted, *solely through representations by counsel,* she "did not receive the alleged [November 15, 2016] letter from [BCA]… [therefore] Plaintiff was not informed of her rights to dispute the debt/request verification of the debt under the FDCPA." *Ibid.* at ¶ 7.

On February 7, 2018, the Court denied BCA's MSJ. *See,* DE 29. Specifically, the Court found there was "a material issue of fact that preclude[d] summary judgment… [as] Plaintiff denies ever receiving [BCA's] November 15, 2016 letter." *Ibid.* at p. 4. The Court did not address any other legal or factual arguments contained in BCA's MSJ, including BCA's position Plaintiff's claims fail as BCA had the right to rely on the creditor to determine the amount due from Plaintiff. *Ibid.*

Through the instant Motion, BCA seeks summary judgment as there is no genuine issue of material fact and BCA is entitled to judgment as a matter of law on Plaintiff's FDCPA and TCPA claims.

### e.  Legal Standard.

Summary judgment is appropriate only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Where the non-moving party

bears the burden of proof on an issue at trial, the movant may simply "[point] out to the district

court that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

    **II.**    **Legal Arguments.**

**FDCPA CLAIMS**

    *a.*  **BCA had the right to rely on Broward Health North to determine the amount due from Plaintiff.**

    Federal district and circuit courts have consistently held that debt collectors are permitted

to rely on information provided by their clients without incurring liability under the FDCPA. The

rationale for these rulings has been consistent: the FDCPA does not require debt collectors to

conduct an independent investigation into the amount or validity of the underlying debt prior to

collections.  *See, e.g. Cornette v I.C. System, Inc.,* Case 16-24454-Civ-COOKE/TORRES, 2017

WL5903557 (Nov. 30, 2017) ("A reading of the FDCPA that requires pre-collection investigation

would … render § 1692g(a)(3) superfluous."); *see also, Pratt v. I.C. System, Inc.,* Case 0:05-cv-

60678-UU (S.D. Fla May 2006) ("[i]t is well settled that debt collectors are entitled to rely on the

information they receive from creditors and are not held strictly liable when they mistakenly

attempt to collect amounts in excess of what is due, if they reasonably relied on information

provided by their clients.");[5] *Clark v. Capital Credit & Collection  Serv.*, 460 F.3d 1162, 1177 (9th

Cir. 2006)  ("[I]f a debt collector reasonably relies on the debt reported by the creditor, the debt

collector will not be liable for any errors.); *Jenkins v. Heintz,*  124 F.3d 824, 833-34 (7th Cir.

1997); *Smith v. Transworld  Sys., Inc.,* 953 F.2d  1025, 1032 (6th Cir. 1992); *Solomon v. Baer &

Timberlake, P.C.*, 504 F. App'x 702, 705 (10th Cir. 2012) (Defendant could not be held liable for

---

[5] A true and correct copy of the Order Granting defendant's MSJ in *Pratt v. I.C. System, Inc.*, Case 0:05-cv-60678-UU (S.D. Fla May 2006) (J. Ungaro), is attached hereto as Exhibit 1.

any alleged misrepresentations about the amount of the debt because it reasonably relied upon information from its client, which it is permitted to do.)

In *Cornette,* the plaintiff alleged defendant was collecting an amount that was not owed, i.e. a collection fee. Defendant argued "if the charge does violate the FDCPA, [it] is still not liable under the FDCPA because it had a right to rely on [the creditor's] representations of Plaintiff's debt." *Cornette*, 2017 WL 5903557. District Court Judge Marcia Cooke agreed stating:

> Nowhere in the FDCPA does the statute specifically require a debt collector to validate a debt prior to seeking collection of such debt. In fact, § 1692g(a)(3) specifically allows a debt collector to assume a debt to be valid if not disputed by the consumer within thirty days of receiving such notice. A reading of the FDCPA that requires pre-collection investigation would therefore render § 1692g(a)(3) superfluous, especially as applied to the first communication between a debt collector and consumer.

*Id.*

Judge Cooke also rejected plaintiff's argument defendant was required to prove the "bona fide error" defense under the FDCPA in order to be entitled to judgment, finding the "reliance argument" to be "distinct" from the bona fide error defense. *Id.*, 2017 WL 5903557, at *6.

*Pratt* is materially indistinct from the instant case and compels the same result. In that case, the plaintiff argued defendant violated the FDCPA's prohibition on the collection of "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt." *Id.,* 0:05-cv-60678-UU at p. 10. Defendant argued that even if the amounts it attempted to collect, including "additional client charges" and 10% interest, were not authorized by the plaintiff's agreement with the original creditor, defendant had a right to rely on the creditor's representation that these amounts were due. Judge Ungaro agreed, stating:

> …even if Plaintiff is correct that his agreement with AHHC did not provide for the additional ten dollar charge or the 10% interest, Defendant is not liable under § 1692f(1) or § 1692e(2) because there are no material facts in dispute that one AHHC informed Defendant these charges were due from Plaintiff, and two, that Defendant reasonably relied on these representations.

*Id.*

In *Ducrest v. Alco Collections,* plaintiff alleged the debt collector violated 1692f(l) "by sending a demand letter to plaintiff which demanded payment of charges which were not expressly agreed upon between the parties." *Id.,* 931 F. Supp. 459, 460 (D. La. 1996). The court dismissed the case, stating:

> …plaintiff would have to show that defendant was knowingly attempting to collect a charge not authorized by the lease and not permitted by law. A debt collector should be able to rely on the representation and implied warranty from its client that the amount was due under either the lease or the law. The FDCPA does not require an independent investigation of the information provided by clients when a debt collector tries to collect a debt, nor does it require the debt collector to dispute the creditor's construction of a contract.

*Id.* at 462.

In *Hubbard v. National Bond & Collection Assoc*., 126 B.R. 422, 426 (D. Del. 1991), aff'd, 947 F.2d 935 (3d. Cir. 1991), the plaintiff debtor sued the defendant collector for its efforts to collect a debt that was part of an estate put into bankruptcy prior to the collection efforts. The contact with plaintiff consisted of a single letter, followed by direct telephone communication with the plaintiff. All collection activity ceased following the telephone conversation. The Bankruptcy Court reasoned that it was against public policy to require a debt collector to fully investigate a debtor's background before proceeding to collect a debt:

> The statutory scheme of the FDCPA thus allows debt collectors to avoid the costs of investigating a debtor's background and ensures a cost effective means by which a debtor and debt collector can

exchange information.  This is an important part of the FDCPA's statutory scheme. The plaintiff's contention that debt collectors must bear the entire burden of collecting information concerning debtors ignores the importance of § 1692g and the Congressional intent behind its enactment.

…

In the present case §1692g functioned as it was intended.  Unaware that [plaintiff] had filed for bankruptcy, National Bond tried to collect a $957.15 debt from her.  The collection notice contained the required written statement that Ms. Hubbard had a right to contest the debt. Ms. Hubbard promptly contacted National Bond, contested the debt, and notified it that she had filed for bankruptcy.  At this point all debt collection efforts by the defendant ceased. The statutory scheme worked.

*Id.*

The FDCPA creates a specific right in favor of a debt collector to assume the debt is valid ***unless the debtor disputes it within 30 days of receiving the § 1692g notice***. Until the point at which the debt collector receives such a timely dispute, it has the right to assume the debt is valid, i.e. it is entitled to rely on its creditor client.

Plaintiff's view of the world would essentially gut § 1692g by removing from that section a debt collector's right to assume the debt is valid absent a dispute from the consumer. Instead, Plaintiff would impose an obligation on the debt collector to determine the validity of the debt prior to engaging in collection activities. There is no legal support for Plaintiff's position, which runs contrary to the specific language of the FDCPA itself.

   ***b.*  Plaintiff waived her right to pursue her FDCPA claims by failing to exercise her right to dispute the validity of the debt with BCA.**

Plaintiff never disputed the validity of the debt with BCA prior to the collection attempts she now asserts violated federal law. *See,* DE 6-1 at ¶¶ 11-13. To be sure, in her Response to BCA's original Motion for Summary Judgment Plaintiff counsel -- perhaps, sensing the writing on the wall --  represented Plaintiff "did not receive the alleged [November 15, 2016] letter from

[BCA]… [therefore] Plaintiff was not informed of her rights to dispute the debt/request verification of the debt under the FDCPA." *See,* DE 12 at ¶ 7. Plaintiff later filed a First Amended Complaint directly contradicting counsel's representation by admitting she received both BCA letters. *See,* DE 34 at ¶ 12 ("Plaintiff has received two statements from Defendant…."). During her deposition, Plaintiff twice confirmed the accuracy of the factual allegations in the First Amended Complaint. *See,* Pl.'s Depo. Tr. at pp. 30-32. Accordingly, despite her counsel's prior representation to this Court, Plaintiff did "receive" BCA's November 15, 2016 collection letter which included the following notice to Plaintiff:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgement and mail you a copy of such judgment or verification.

*See,* DE 6-1 at ¶ 9.

Plaintiff's FDCPA claims run counter to the statutory language of the FDCPA which grants debt collectors the <u>right</u> to "assume" the debt is "valid" unless the debtor disputes the debt within the 30-day validation period. *See,* § 1692g(a)(3). Simply stated, the statutory language "demonstrates that, absent a dispute, the debt collector is allowed to assume the debt is valid." *See, Palmer v. I.C. Sys., Inc.*, C-04-03237 RMW, 2005 WL 3001877, at *5 (N.D. Cal. Nov. 8, 2005). Given the statute's clear language, common sense dictates "where it is undisputed that the consumer never contacted the collector to contest the debt before the final collection attempt, plaintiff cannot assert a cause of action under the FDCPA solely based upon the debt collector's attempt to collect an invalid debt." *Id.* That is what Plaintiff is doing in this case.

In *Bleich v. Revenue Maximization Group, Inc.*, the debt collector sent correspondence to the plaintiff to collect a debt that, unbeknownst to the defendant, the plaintiff had already been satisfied. *Id.*, 233 F. Supp. 2d 496, 501 (E.D.N.Y. 2002). The defendant's initial collection letter, like BCA's letter to Plaintiff, contained the "specific information required by the FDCPA regarding the validity of the debt at issue… [advising] that the debt would be assumed to be valid unless, within thirty days of receipt of the letter, Plaintiff disputed its validity." *Id.* at 498. Upon receipt of the letter, the plaintiff, like Plaintiff in this case, "did not take advantage of the statutory debt validation procedure… [and] made no attempt to contact [the debt collector] directly regarding the debt." *Id.* The *Bleich* court granted summary judgment in favor of the debt collector, stating:

> where a debt collector has included appropriate language regarding the FDCPA debt validation procedure, the allegation that the debt is invalid, standing alone, cannot form the basis of a lawsuit alleging fraudulent or deceptive practices in connection with the collection of a debt. Likewise, a consumer alleging that a debt referenced in a collection letter is not valid, is required to follow the clear and orderly procedure set forth in the FDCPA.

*Id.* at 501.

The *Bleich* court further emphasized that:

> To allow such lawsuits would discourage use of the detailed statutory procedure. Instead, individuals would be encouraged to resort to litigation (and the prospect of an attorney's fee award) instead of being encouraged to communicate directly with the debt collector to expeditiously resolve their claim. As set forth by the court in *Lindbergh,* this court, too, "can only wonder why the plaintiff has chosen to impose the significant burden of litigation on both the defendant and this court, instead of simply following that cost-effective procedures provided by the FDCPA specifically designed to facilitate the exchange of information between debt collectors and debtors."

*Id.* (citing *Lindbergh v. Transworld Sys., Inc.*, 846 F. Supp. 175, 179 (D. Conn. 1994)).

In the case at bar, this Court should follow suit and refuse to encourage consumers "to resort to litigation (and the prospect of an attorney's fee award)" instead of exercising their statutory rights. To do otherwise would subject debt collectors to expensive litigation for attempting to collect debts the debt collector had a *statutory right* to assume were valid. By failing to dispute the debt and instead, bringing suit, Plaintiff has denied BCA valuable protections the FDCPA provides.

For example, if Plaintiff had disputed the debt as provided for in the statute, BCA could have, and would have, ceased collection attempts thereby avoiding FDCPA liability. *See,* DE 6-1 at ¶ 15. In *Jang v. A.M. Miller and Assocs.,* the plaintiff brought an FDCPA claim alleging that even though the defendant debt collector ceased collection upon a request for verification, the debt collector violated the FDCPA by attempting to collect an illegitimate debt. *Id.*, 122 F.3d 480, 483 (7th Cir. 1997). The Seventh Circuit rejected plaintiff's claim, stating: "in the real world, creditors and debt collectors make mistakes, and sometimes initiate collection activities against persons who to not owe a debt." *Id.* at 483. As such, the *Jang* court held that as long the debt collector ceases all collection efforts upon a request for verification, no FDCPA liability would be incurred. *Id.*

In the instant case, if Plaintiff had exercised her statutory right to request verification, BCA could have, and would have, simply ceased collection efforts and avoided liability. *See,* Ex. A at ¶ 18.[6] Instead, Plaintiff failed to exercise her statutory rights—in fact, her only response to BCA's collection attempts was her Demand Letter threatening the instant lawsuit—and now asks this Court to find BCA violated the FDCPA by attempting to collect a debt Plaintiff never disputed, thereby giving BCA the statutory right to assume was undisputed. *Ibid.*

---

[6] This is further proven by the fact BCA ceased collections when Plaintiff's counsel advised the debt was subject to Workers' Compensation.

As in *Bleich*, in the instant case it is undisputed that BCA's initial collection letter was received by Plaintiff and contained the language required by the FDCPA that the debt would be assumed valid unless, within thirty days of receipt of the letter, Plaintiff disputed its validity. *Ibid.* at ¶ 9. Consistent with *Bleich*, Plaintiff's FDCPA claims fail as it is undisputed that Plaintiff did not take advantage of the statutory debt validation procedure and made no attempt to contact BCA to dispute the debt until threatening the instant lawsuit. *See, Bleich* 233 F. Supp. 2d at 501; *See,* DE 6-1 at ¶ 15.

   *c.*   **BCA is entitled to summary judgment on its bona fide error defense.**

Section 1692k(c) of the FDCPA provides the so-called "bona fide error" defense. To prevail on this defense, the debt collection must show the mistake (1) was "not intentional"; (2) was "a bona fide error"; and (3) occurred despite the maintenance of procedures "reasonably adapted to avoid any such error." *Owen v. I.C. Sys., Inc*., 629 F.3d 1263, 1271 (11th Cir. 2011).

As detailed in Ms. Kinggards's Declaration, BCA has reasonable policies and procedures in place to avoid violations of the FDCPA as the one alleged in this case.  BCA's client contract with the hospital specifically required any account placed for collection with BCA be validly due and owing, and the hospital was responsible for providing accurate, up-to-date information about the account.  Moreover, BCA has extensive policies and procedures prohibiting collection of accounts that are compensable under Workers' Compensation.  If at any time, BCA becomes aware that an account referred to it by a client is compensable through Worker's Compensation, BCA will cease contact with the consumer. Furthermore, if BCA is made aware that an account would be compensable by Worker's Compensation at the inception of the referral, BCA would not accept such account and immediately return it to the client.

There is no evidence BCA knew the debt at issue was subject to Workers' Compensation insurance until it was advised by Plaintiff's counsel. "[T]he FDCPA does not require debt collectors to independently investigate and verify the validity of a debt to qualify for the bona fide error defense." *Id.*, 629 F.3d at 1276. Upon receipt of counsel's letter, BCA took steps to confirm the accuracy of Plaintiff's counsel's statements and closed the account. This is entirely consistent with BCA's policies and procedures related to Workers' Compensation.

As the Eleventh Circuit made clear in *Owen*, to satisfy the bona fide error defense, a defendant's procedures need only be reasonably adapted to avoid "readily discoverable errors." *Id.*, 629 F.3d 1277. The error at issue here was not "readily discoverable," as evidenced by the fact that when BCA contacted the creditor hospital after receiving Plaintiff's counsel's dispute letter, the hospital itself indicated it had no information demonstrating the injury was work-related. It was when BCA took it upon itself to hunt down and contact Publix risk management department, that it learned the injury was work-related.

## TCPA CLAIMS

### *a.* **Plaintiff consented to the calls at issue.**

Plaintiff's First Amended Complaint alleges "[a]t no time did Plaintiff ever consent to receive any debt collection calls from either Broward Health North or from [BCA]." *See,* DE 34 at ¶ 15. Contrary to Plaintiff's representations, the evidence is undisputed Plaintiff provided her phone number to Broward Hospital North in connection with the medical treatment she received.

The FCC has determined "prior express consent" to call a telephone number assigned to cellular telephone service exists in situations where the called party has provided the cellphone number to a creditor, who later provides it to a debt collection agency. *See, In re: Rules and*

*Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C.R. 559, ¶ 9 (F.C.C.2007). (emphasis added); *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110 (11th Cir. 2014).

The Eleventh Circuit has made clear the FCC Ruling regarding prior express consent by providing a cell phone number to a creditor applies in the context of medical debt collection. *See, Lawrence v. Bayview Loan Servicing*, LLC, 666 Fed. Appx. 875, 878 (11th Cir. 2016) (unpublished) ("The FCC has explained that 'persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary.'")

In this case, Plaintiff testified at deposition she provided Broward Hospital North with the telephone number at issue, 718-600-4388, upon her admission to the hospital on July 26, 2016. *See*, Statement of Material Facts at   32. Plaintiff's provision of her telephone number was in connection with her admission to Broward Hospital North. Hence, "prior express consent existed when [Plaintiff] made the number available to the creditor regarding the debt." *See, Mais,* supra.

There is no evidence Plaintiff revoked consent. Specifically, Plaintiff testified she received calls from BCA but did not recall "ever having a conversation" with someone calling from BCA. *See*, Statement of Material Facts at ¶ 32. BCA has confirmed there was no direct communication as a result of any of the calls BCA placed to Plaintiff's phone number. *Ibid.*  at ¶ 16.

Instead, it is uncontested the first time BCA received information of any kind from Plaintiff was upon BCA's receipt of Plaintiff's Demand Letter on or about April 3, 2017. *Ibid.* at ¶ 18. After receipt of Plaintiff's Demand Letter, BCA sent a letter to Plaintiff's counsel, dated April 12, 2017, confirming all collection activity on Plaintiff's account had been suspended. *Ibid.* at ¶ 22.

### *b.*  There is no evidence BCA used an ATDS to call Plaintiff.

Plaintiff has alleged that Defendant violated the TCPA through the placement of telephone calls to her cellular telephone. *See,* DE 1 at ¶ 14. "[A] TCPA claim is comprised of the following elements: (1) a call was made to a cell or wireless phone, (2) by the use of an automatic telephone dialing system ["ATDS"] or an artificial or prerecorded voice, and (3) without prior express consent of the called party." *Witchard v. Allied Interstate, LLC*, 8:15-CV-1109-T-33MAP, 2015 WL 6817163, at *2 (M.D. Fla. Nov. 6, 2015). It is axiomatic that to prevail on a claim brought under the TCPA "[i]t is Plaintiff who must show, as an element of his claim, that Defendant used an ATDS[.]" *Buslepp v. Improv Miami, Inc.*, 12-60171-CIV, 2012 WL 4932692, at *2 (S.D. Fla. Oct. 16, 2012).

If at the summary judgment stage, a TPCA plaintiff fails to come forward with evidence sufficient to demonstrate that an ATDS was used to place a telephone call to her cellular telephone, the defendant is entitled judgment as a matter of law. *See, e.g., Bischoff v. Osceola County, Fla.*, 222 F.3d 874, 880 (11th Cir. 2000)(Noting that the plaintiff is "required, at the summary judgment stage, to bring forth sufficient evidence of the essential elements on which it bears the burden of proof.")

Plaintiff has failed to elicit any evidence demonstrating the telephone calls at issue were placed by an ATDS. As Plaintiff cannot offer evidence as to an essential and contested element of his claim, BCA is entitled to judgment as a matter of law on that claim. *See, e.g., Dominguez v. Receivables Performance Mgt.*, EP-13-CV-117-PRM, 2014 WL 2112123, at *4 (W.D. Tex. Apr. 29, 2014); *Hilgenberg v. Elggren & Peterson*, 2:13-CV-1086, 2015 WL 4077765, at *7 (D. Utah July 6, 2015).

In *Dominguez*, the defendant moved for summary judgment on the plaintiff's TCPA claims on the grounds that the plaintiff "cannot meet the burden of proof on his claims." *Id.*, 2014 WL 2112123 at *1. In granting the defendant's motion, the Court held: "While Plaintiff alleges in his Complaint that 'Defendant used an automated telephone dialer system with an artificial or prerecorded voice,' Compl. ¶ 11, Plaintiff has not provided any evidence to support this allegation."

In the instant case, as in *Dominguez* and *Hilgenberg*, Plaintiff has failed to present or procure any evidence demonstrating the telephone calls at issue were placed by and ATDS. As in *Hilgenberg*, "[i]f the court denied summary judgment here, the [Plaintiff] would proceed to a trial on the TCPA claims without any evidence that the TCPA governs [Defendant's alleged] conduct." *Id.*, 2015 WL 4077765 at *7. Because "the Court cannot, in the absence of any proof, assume that Plaintiff could or would prove the necessary facts" at trial, the Court must enter summary judgment in favor of Defendant. *Dominguez*, 2014 WL 2112123 at *4.

WHEREFORE, Defendant, BCA FINANCIAL SERVICES, INC., respectfully requests an Order from this Honorable Court GRANTING Defendant summary judgment as a matter of law and dismissing the case with prejudice.

Respectfully submitted by:
 /s/ Dale T. Golden
DALE T. GOLDEN, ESQ.
Florida Bar No.: 0094080
**GOLDEN SCAZ GAGAIN, PLLC**
201 North Armenia Avenue
Tampa, Florida 33609-2303
Phone: (813) 251-5500
dgolden@gsgfirm.com
*Counsel for Defendant*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on August 3, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF.  I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Dale T. Golden
DALE T. GOLDEN, ESQ.
Florida Bar No.: 0094080